**IMPORTANT NOTICE: Courtesy copies of documents you file should NOT be provided to any judge. All communications with the court SHALL ONLY be by document filed with the Clerk of Court.**

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

ROBERT MCGUIRE,                          CIVIL ACTION
        Plaintiff                 SECTION "P"
                                        NO. 1:06-CV-02178
VERSUS

CORRECTIONAL CORPORATION OF          JUDGE DEE D. DRELL
AMERICA, et al.,                     MAGISTRATE JUDGE JAMES D. KIRK
        Defendants


## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a civil rights complaint filed pursuant to 28 U.S.C. § 1983, in forma pauperis, by pro se plaintiff Robert McGuire ("McGuire") on November 13, 2006 (Doc. 1) and amended on May 1, 2007 (Doc. 11).  The named defendants are Corrections Corporation of America ("CCA")(the private operator of the Winn Correctional Center ("WCC") in Winnfield, Louisiana), Tim Wilkinson ("Wilkinson")(warden of WCC), Richard Stalder ("Stalder")(Secretary of the Louisiana Department of Corrections), and several employees of WCC/CCA - Tim Keith, Lori Rodriguez, Dr. Pacheco, Pat Thomas, Kathy Richardson, Angie Davis, Sharon Rush, Mitzi Boyd Gaskill, Mary Fobbs, Carla Burke, LPN Mauterer, and Officer Perot.[1]

_____

[1] The Louisiana State University Medical Center in Shreveport, Louisiana and the E.A. Conway-LSU Hospital in Monroe, Louisiana were also named defendants, but were dismissed from this suit (Docs. 6, 9).

McGuire contends that, while he was confined in WCC in June 2005 through 2007,[2] he was denied appropriate medical care for a knee injury incurred in March 2005.  For relief, McGuire asks for monetary damages, a jury trial, and injunctive relief.  McGuire is presently confined in WCC.

Defendants answered the complaint (Doc. 21).  McGuire filed a motion for summary judgment (Doc. 58) which defendants opposed[3] (Doc. 61), and McGuire filed a reply brief (Doc. 65).  McGuire's motion for summary judgment is now before the court for disposition and it appears that the court has all medical records which are relevant to the events regarding which plaintiff sues.

<u>Law and Analysis</u>

<u>The Law of Summary Judgment</u>

Rule 56 of the Federal Rules of Civil Procedure mandates that a summary judgment:

> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, [submitted concerning the motion for summary judgment], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

---

[2] Apparently McGuire was temporarily transferred from WCC to Hunt Correctional Center, then to a work-release facility where it was determined he could not work due to his medical problems, then returned to Hunt, which returned him again to WCC.

[3] Although defendants fully supported their opposition to McGuire's motion for summary judgment, their counsel did not file a motion for summary judgment on their behalf.

Paragraph (e) of Rule 56 also provides the following:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material".  A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff.  Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct

3

the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial.   In this analysis, we review the facts and draw all inferences most favorable to the nonmovant.  Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989).   However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment.  Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82(1992).

Proving an Eighth Amendment Claim for Denial of Medical Care

Under the Eighth Amendment, a lack of proper inmate medical care can be "cruel and unusual punishment" only if it is "sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).  The Supreme Court defined "deliberate indifference" as "subjective recklessness," or in other words, a conscious disregard of a substantial risk of serious harm.  Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994).  Because an inadvertent failure to provide adequate medical treatment does not violate the Eighth Amendment, deliberate indifference does not include a complaint that a physician has been negligent in diagnosing or treating a medical condition, Estelle, 97 S.Ct. at 291, or a disagreement between the inmate and the medical staff as to the medical treatment provided.  Norton v.

4

<u>Dimazana</u>, 122 F.3d 286, 292 (5ᵗʰ Cir. 1997).

A prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. <u>Easter v. Powell</u>, 467 F.3d 459, 464 (5ᵗʰ Cir. 2006), citing <u>Domino v. Tex. Dep't of Criminal Justice</u>, 239 F.3d 752, 756 (5th Cir. 2001). A prison official is deliberately indifferent to the serious medical needs of prisoners if he intentionally denies or delays access to medical care. <u>Walker v. Butler</u>, 967 F.2d 176, 178 (5th Cir. 1992); <u>Thompkins v. Belt</u>, 828 F.2d 298, 303 (5th Cir. 1987).

In the case at bar, McGuire contends he suffered a displaced patella, bilateral meniscal tear, collateral ligament tear, and bone bruise injury in June 2005 (Doc. 61-9, Bates 347), for which he was initially treated in the emergency room at LSUHSC-E.A. Conway (Doc. 61-9, Bates 342-346), then referred to LSU Health Sciences Center-Shreveport (Doc. 58-7, p. 19; Doc. 61-9, Bates 347-348); a neoprene knee brace was prescribed and provided for him at that time.

McGuire contends that, when he returned to WCC, his knee brace was taken from him and replaced with a "spiral left knee support" which aggravated his injury and caused swelling, pain and stiffness. McGuire contends the "spiral left knee support" was

subsequently removed at LSUHSC-Shreveport and a different brace was again prescribed, but was never provided.  McGuire also alleges surgery was recommended to repair his knee, but officials at WCC/CCA refused to authorize it.

In October and December 2005 and January 2006, LSUHSC-Shreveport prescribed quadriceps strengthening exercises for McGuire through physical therapy (Doc. 58-7, pp. 27-33).  LSUHSC-E.A. Conway noted in February 2006 that McGuire had been told at LSUHSC-Shreveport to build up the muscles in his knee and wear orthotic "comfort" insoles, and that surgery was not planned (Doc. 58-7, p. 22).

In May 2006, it was noted at LSUHSC-E.A. Conway that McGuire had been told at LSUHSC-Shreveport that they would not do surgery on his knee (Doc. 58-7, pp. 23-24).  In May 2006, LSUHSC-Shreveport prescribed a neoprene brace and comfort insoles (Doc. 58-7, pp. 35-36, 37).  The physical therapist noted that McGuire requested surgery and said he hated the ride to LSU, but the therapist told McGuire the doctor had to order the surgery; the therapist also wrote "another letter" to WCC requesting a neoprene sleeve for McGuire (Doc. 58-7, p. 38).

McGuire contends that, in July 2006, he was told to go to the WCC infirmary to pick up his knee brace but, when he arrived, he overheard LPN Fobbs read aloud written instructions from WCC Medical Director Pat Thomas, which were on the knee brace; Thomas'

instructions were to not give the brace to McGuire without authorization by Thomas, NP Richardson, or the doctor (Doc. 1). McGuire contends he was not given the brace at that time, but was called to the infirmary in August 2006 and issued a different knee brace by RN Davis (Doc. 1).

In October 2006, LSUHSC-Shreveport noted that McGuire was non-compliant with his physical therapy (Doc. 58-7, p. 36), diagnosed degenerative arthritis and a history of a healing fracture, and noted that he still did not have a neoprene knee brace (Doc. 58-7, pp. 39-40).

According to Dr. Pacheco's affidavit, he ordered that McGuire be fitted with a neoprene brace and custom molded insert in October 2006, but cancelled the order in January 2007 after having met with McGuire in December 2006; Dr. Pacheco does not recall the reason for the cancellation (Doc. 61-2).

In October 2007, an x-ray showed a healing fracture of McGuire's left patella and degenerative changes since the 2005 x-ray and MRI (Doc. 58-7, p. 42); McGuire was discharged from physical therapy (Doc. 58-7, p. 47).

<u>Warden Wilkinson</u>

McGuire named Warden Wilkinson as a defendant in this case, apparently in his capacity as a supervisor since he has not made any specific factual allegations which involve Warden Wilkinson.

The doctrine of respondeat superior, which makes an employer

or supervisor liable for an employee's alleged tort, is unavailable in suits under 42 U.S.C. §1983.  <u>Thompkins v. Belt</u>, 828 F.2d 298, 303 (5th Cir. 1987).  Well settled §1983 jurisprudence establishes that supervisory officials cannot be held vicariously liable for their subordinates' actions.  Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injury.  <u>Mouille v. City of Live Oak, Tex.</u>, 977 F.2d 924, 929 (5th Cir. 1992), <u>cert. den.</u>, 508 U.S. 951, 113 S.Ct. 2443 (1993); <u>Thompkins</u>, 828 F.2d at 303.

McGuire has not alleged or offered any proof of any acts or omissions of Warden Wilkinson or any unconstitutional policies implemented by Warden Wilkinson which have deprived McGuire of his constitutional rights.  Therefore, McGuire's motion for summary judgment should be denied, a summary judgment should be granted in favor of Wilkinson on motion of the court sua sponte, and McGuire's action for damages against Warden Wilkinson should be dismissed.

<u>Richard Stalder</u>

McGuire alleges Louisiana Department of Corrections Secretary Stalder is also liable to him, apparently because McGuire is in the care and custody of the Louisiana Department of Corrections. McGuire has not specified whether Stalder is sued in his official and/or personal capacities.

8

The Eleventh Amendment bars suit against a state official when the state is the real substantial party in interest.  The general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter.  And, as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief.  Aguilar v. Texas Dept. of Criminal Justice. 160 F.3d 1052, 1054 (5th Cir. 1998), cert. den., 528 U.S. 851, 120 S.Ct. 130 (1999).  Neither a state nor its officers acting in their official capacities are "persons" under §1983.  Hafer v. Melo, 502 U.S. 21, 112 S.Ct. 258, 362 (1991).  However, in Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441 (1908), the Supreme Court made an exception to the Eleventh Amendment.  To meet the Ex Parte Young exception, a plaintiff's suit alleging a violation of federal law must be brought against individual persons in their official capacities as agents of the state, and the relief sought must be declaratory or injunctive in nature and prospective in effect. Aguilar, 160 F.3d at 1054.  Therefore, Stalder is entitled to absolute immunity from a suit for damages in his official capacity and McGuire's action against Stalder in his official capacity should be dismissed.

Moreover, in order to establish the personal liability of a certain defendant to a plaintiff who is claiming damages for

9

deprivation of his civil rights, that plaintiff must show that particular defendant's action or inaction was a violation of the plaintiff's civil rights.  Reimer v. Smith, 663 F.2d 1316, 1322 n. 4 (5th Cir. 1981).  Also, Malley v. Briggs, 475 U.S. 335, 106 S.Ct. 1092, 1098 n. 7 (1986).  McGuire has not alleged or offered any proof of any act or omission by Stalder which constituted a violation of McGuire's civil rights.

Therefore, McGuire's motion for summary judgment should be denied, a summary judgment should be granted in favor of Stalder on motion of the court sua sponte, and McGuire's action against Stalder should be dismissed.

Dr. Rodriguez, Officer Perot, LPN Mauterer, Tim Keith

Dr. Rodriguez,[4] Officer Perot,[5] LPN Mauterer,[6] and Assistant

---

[4] McGuire admits he argued with Dr. Rodriguez about his duty status in about March 2005, prior to his knee injury.  Since that is the only allegation McGuire makes concerning Dr. Rodriguez, McGuire has not alleged or offered any proof of any act or omission by Dr. Rodriguez which constitutes a violation of McGuire's civil rights.

[5] McGuire contends that Officer Perot was aware that the medical department refused to give him the knee brace prescribed for him by the doctor and ordered for him by the physical therapist and that, in accordance with the written instructions by Pat Thomas, Officer Perot told McGuire there was nothing at the infirmary for him.  However, McGuire does not allege that Officer Perot was involved in his medical care in any way or violated his constitutional rights.

[6] McGuire alleges that LPN Mauterer was unable to find the knee brace in the infirmary which had been ordered for him by the physical therapist.  McGuire has not alleged or offered any proof of any acts or omissions of LPN Mauterer which have deprived McGuire of his constitutional rights

Warden Time Keith[7] were never served.  Accordingly, the complaint against these defendants should be dismissed pursuant to Fed.R.Civ.P. 4(m), and McGuire's motion for summary judgment should be denied.  See <u>McGinnis v. Shalala</u>, 2 F.3d 548, 550 (5th Cir. 1993), cert. den., 510 U.S. 1191, 114 S.Ct. 1293 (1994); <u>Systems Signs Supplies v. U.S. Dept. of Justice</u>, 903 F.2d 1011, 1013 (5th Cir. 1990); <u>Kersh v. Derosier</u>, 851 F.2d 1509, 1512 (5th Cir. 1988).

<u>LPN Mary Fobbs</u>

McGuire contends that LPN Fobbs tried to find the knee brace that arrived at WCC for him in July 2006, but when she found it she also found written instructions from Pat Thomas to not give it to McGuire unless authorized by Pat Thomas, N.P. Richardson, or the doctor.  LPN Fobbs complied with the written instructions of the medical director and did not give the brace to McGuire.  Fobbs did not have the authority to deny medical care to McGuire; she carried out the orders of her supervisors.  McGuire has not alleged or offered any proof of any act or omission by LPN Fobbs which constituted a violation of McGuire's civil rights.  Therefore, McGuire's motion for summary judgment should be denied, a summary judgment should be granted in favor of Fobbs on motion of the court

---

[7] McGuire apparently sued Assistant Warden Tim Keith because he was the "warden over the medical department."  As discussed above, the doctrine of respondeat superior is unavailable under Section 1983.  McGuire has not alleged or offered any proof of any acts or omissions of Warden Keith or any unconstitutional policies implemented by Warden Keith which deprived McGuire of his constitutional rights.

sua sponte, and McGuire's action against Fobbs should be dismissed.

<u>Sharon Rush</u>

McGuire named Sharon Rush, the pharmacy technician at WCC, as a defendant, alleging she was responsible for ordering and purchasing his knee brace.  McGuire alleges that, although Rush was supposed to order a "knee brace" for him, she ordered something labeled "knee support."[8]  McGuire accuses Rush of "conspiring" with the other defendants to deprive him of his prescribed knee brace, but has not shown that she was responsible for authorizing his knee brace or for prohibiting him from having it.  Moreover, it does not appear that McGuire was denied an appropriate knee brace.

Since McGuire has not alleged or offered any proof of any act or omission by Rush which constituted a violation of McGuire's constitutional rights, McGuire's motion for summary judgment should be denied, a summary judgment should be granted in favor of Rush on motion of the court sua sponte, and McGuire's action against Rush should be dismissed.

<u>Dr. Pacheco, Pat Thomas, Angie Davis, LPN Burke, RN Richardson, CCA</u>

McGuire contends defendants denied him appropriate medical care by denying him the prescribed knee brace and knee surgery.

---

[8] According to the American Academy of Family Physicians, "[k]nee braces are supports that you wear for a painful or injured knee," and they come in many designs and materials.  See MEDLINEplus Health Information, Medical Encylopedia: "Knee Bracing: What Works?"*, available at*, http://familydoctor.org/online/famdocen/home/healthy/physical/injuries/490.printerview.html.

First, McGuire contends CCA refused to authorize his knee surgery due to cost.  However, there is nothing in the record before this court that shows any doctor prescribed surgery for McGuire.  Instead, there is only McGuire's statement that the physical therapist told him he needed surgery.  McGuire also contends that LPN Burke told him that, if surgery is ordered by a physician, CCA would have to authorize it before McGuire could have it (Doc. 1; Doc. 58-7, p. 69).  However, RN Davis told McGuire that a doctor at LSU had to order the surgery, not CCA, and that his doctors had not done so (Doc. 58-6, p. 43).  Therefore, McGuire has not shown that he was denied medical care by any defendant because he did not have surgery.

McGuire also alleges he was denied appropriate medical care because he was not given the neoprene knee brace prescribed by the emergency room doctor and eventually ordered for him by the physical therapist; McGuire contends Thomas, Davis, Richardson, and Burke conspired to prevent him from having the correct knee brace.

Dr. Pacheco began working as the physician at WCC in October 2005, so he was not involved in the initial stages of McGuire's treatment for his June 2005 knee injury.  McGuire alleges in his complaint that, on August 15, 2006, Dr. Pacheco saw him for continued pain and stiffness in his left knee.  McGuire contends Dr. Pacheco only did a "partial examination" and did not prescribe any pain medication, but instead changed McGuire's duty status to

fewer limitations.  McGuire does not allege any adverse effects or other problems from the change in his duty status.  It is noted that, during that time period, McGuire was undergoing physical therapy and was receiving treatment from outside providers at LSUHSC-Shreveport and LSUHSC-E.A. Conway.  McGuire's complaint mentions Dr. Pacheco again when he states that he filed a grievance concerning the inadequate medical care he had been receiving from Dr. Pacheco and the medical staff.

McGuire contends, and the record shows, that McGuire was initially denied the neoprene knee brace because it was allegedly a "security threat."   Later, Pat Thomas attached written instructions to the knee brace that was ordered for McGuire, stating that it was not to be given to McGuire without authorization by herself, RN Richardson, or the doctor.[9]

Dr. Pacheco states in his affidavit that he does not know why McGuire was not allowed to have the original neoprene knee brace since there are no metal parts in a neoprene brace that would constitute a security threat (Doc. 61-2).  However, an affidavit by LPN Mitsy Boyd Gaskill shows that the knee brace placed on McGuire at the LSUHSC-E.A. Conway emergency room had metal parts on the exterior and security insisted he take it off in the walkway and dorm (Doc. 61-4).  Gaskill  states that she offered to let McGuire

---

[9] Pat Thomas' affidavit does not address this issue (Doc. 61-3).

remain in the infirmary where he could continue to wear the knee brace, at least until the doctor could see him, but McGuire declined, so the brace was removed and a different brace was put on him.

Dr. Pacheco states in his affidavit that the type of knee brace provided to McGuire at WCC to replace the neoprene brace, a Barlow brace, was an appropriate substitution for the knee brace provided in the emergency room (Doc. 61-2).  Although McGuire contends the doctor at LSU later removed the Barlow brace from his leg, McGuire also states the doctor said the brace was hurting him because it was on too tight, not that it was the wrong type of knee brace (Doc. 1).

McGuire has not shown that he was denied appropriate medical care.  Although the Barlow knee brace provided to him may have been put on him incorrectly (too tightly) by the medical staff, that claim constitutes negligence rather than the deliberate indifference to serious medical needs required to prove a civil rights violation.  It does not appear McGuire had a serious medical need for a neoprene brace in particular, but instead simply needed a supportive knee brace which was provided.  Nothing in the medical records indicates the knee brace McGuire was provided with was inappropriate or inadequate.

McGuire has not alleged or offered any proof of any act or omission by CCA, Dr. Pacheco, Pat Thomas, Richardson, Burke, Davis,

or Gaskill which constituted deliberate indifference to McGuire's serious medical needs.  Therefore, McGuire's motion for summary judgment should be denied, a summary judgment should be granted in favor of CCA, Dr. Pacheco, Pat Thomas, Richardson, Burke, Davis, and Gaskill on motion of the court sua sponte, and McGuire's action against CCA, Dr. Pacheco, Pat Thomas, Richardson, Burke, Davis, and Gaskill should be dismissed.

<u>Conclusion</u>

Based on the foregoing discussion, IT IS RECOMMENDED that McGuire's motion for summary judgment be DENIED, that a SUMMARY JUDGMENT BE GRANTED SUA SPONTE IN FAVOR OF Corrections Corporation of America, Tim Wilkinson, Richard Stalder, Dr. Pacheco, Pat Thomas, Kathy Richardson, Angie Davis, Sharon Rush, Mitzi Boyd Gaskill, Mary Fobbs, and Carla Burke on motion of the court sua sponte, and that McGuire's action against Corrections Corporation of America, Tim Wilkinson, Richard Stalder, Dr. Pacheco, Pat Thomas, Kathy Richardson, Angie Davis, Sharon Rush, Mitzi Boyd Gaskill, Mary Fobbs, and Carla Burke be DENIED AND DISMISSED WITH PREJUDICE.

IT IS FURTHER RECOMMENDED that McGuire's complaint against Tim Keith, Dr. Lori Rodriguez, LPN Mauterer, and Officer Perot be DISMISSED WITHOUT PREJUDICE for failure to effect service of process, pursuant to Fed.R.Civ.P. rule 4(m).

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and

Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 9th day of March 2010.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

17